UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

LOWANA SHANELL DUMAS,

    Plaintiff,

v.                                    Case No. 10-12661

HURLEY MEDICAL CENTER, et al.,

    Defendants.

                                               /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

On July 6, 2010, Plaintiff Lowana Shanell Dumas initiated the above-captioned case by filing a complaint against Defendant City of Flint, Defendants AFSCME Council 25, AFSCME Local 1603, Deloris Lots, and Patricia Ramirez (collectively "AFSCME"), and Defendant Hurley Medical Center, together with the remaining individual Defendants (collectively "Hurley"). The complaint contained eighty-nine counts against eighteen Defendants. On February 4, 2011, Plaintiff filed her first amended complaint. Following further motions, a second amended complaint was filed on May 5, 2011, consisting of ten counts. Pending before the court are three motions to dismiss filed by Flint, Hurley, and AFSCME. Plaintiff responded on June 20, 2011,[1] and no replies have been filed. Having reviewed the motion and supporting briefs, the court concludes that a hearing is not necessary. E.D. Mich. LR 7.1(f)(2). For the reasons stated below, Defendants' motions will be granted in part and denied in part.

---

[1] Plaintiff filed an amended response on June 21, 2011, which presents identical substantive arguments. As it was untimely filed, the court will not consider it.

## I.  BACKGROUND

For the purpose of Defendants' motions to dismiss, the allegations in Plaintiff's second amended complaint will be accepted as true.  Plaintiff's statement of fact indicates that she had been an employee of Hurley, and this case arises out of certain events relating to her employment and eventual termination.  Beginning in August 2007, Plaintiff began working at Hurley Medical Center as a laboratory clerk under the supervision of Deloney.  Plaintiff informed Deloney prior to beginning work that she suffered physical and mental disabilities, and Deloney assured Plaintiff that reasonable accommodations would be made.  Upon beginning employment, Plaintiff became covered by a collective bargaining agreement ("CBA") between Hurley and AFSCME.  Hurley also provided her with information about the retirement benefits available to her as an employee of Hurley through the City of Flint's employee retirement system.

Problems soon began to arise between Plaintiff and other laboratory clerks, the individual nonsupervisory Hurley Defendants.  These coworkers apparently harbored racial animus toward Plaintiff, as well as finding Plaintiff's personality, physical appearance, and cultural affinities objectionable.  They repeatedly referred to Plaintiff in a derogatory manner, physically harassed Plaintiff by intentionally bumping into her, and falsely accused her of misconduct or incompetence to the laboratory supervisor.  Although Deloney initially supported Plaintiff against these attacks, she eventually joined in their harassment.  Whether intentionally or otherwise, Deloney revealed confidential medical information regarding Plaintiff's disabilities to her coworkers, which resulted in increasing their abuse of Plaintiff.  After that point, Plaintiff's continuing complaints were ignored and met with increasing hostility.

Seeing no response from her immediate supervisor, Plaintiff approached her union representatives to discuss filing a grievance. The AFSCME representative, Thompson, refused or failed to initiate the established grievance procedure. Thereafter, Plaintiff approached Parker to file an Equal Employment Opportunity Commission ("EEOC") complaint. Although Parker indicated that previous investigations had been conducted for similar allegations against the laboratory clerks and supervisors, no action was taken beyond the filing of a complaint.

After Plaintiff's complaint, Deloney retaliated by changing Plaintiff's work schedule and duties. Deloney further altered policies in contradictory ways in order to aggravate Plaintiff's mental disabilities. Upon the request of one of Plaintiff's coworkers, Marsh, Deloney rescheduled Plaintiff's work hours in violation of the CBA. However, AFSCME refused to take appropriate action despite Plaintiff's continued requests to initiate the grievance procedure. As a result of the foregoing, Plaintiff received three disciplinary reports, two suspensions, and one termination on November 30, 2007. The disciplinary reports purported to be issued on different dates, with repeated failures to comply with Hurley policies. A letter terminating Plaintiff's employment with Hurley followed on December 19, 2007.

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). In doing so, "the court must draw all reasonable inferences in favor of the

plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 466 (6th Cir. 2000)). Although a heightened fact pleading of specifics is not required, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* held that a "showing that the pleader is entitled to relief" requires the allegation of sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of [illegal conduct]." 550 U.S. at 556. In so stating, the Court spoke in terms of "plausibility," rather than mere "conceivability." *Id.*

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citing Fed. R. Civ. P. 8(a)). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *abrogated on other grounds by Twombly*, 550 U.S. 544. In application, a "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). Therefore, "to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a

claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citations and internal quotation omitted). Despite these requirements, a court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's well-pled factual allegations. *Twombly*, 550 U.S. at 556.

Federal Rule of Civil Procedure 12(e) allows for the filing of a motion for a more definite statement, and gives the district court the discretion to grant such motion if the pleading complained of "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Polishing the pleadings by means of motion practice is rarely worth the effort." *Compuware Corp. v. International Business Machines*, 259 F. Supp. 2d 597, 600 (E.D. Mich. 2002) (quoting 5 Charles A. Wright & Arthur A. Miller, Federal Practice and Procedure, § 1218, at 185 (1990)). "Any evidentiary detail a defendant may require is more properly the subject of discovery." *Id.* (citing *Communities for Equity v. Michigan High School Athletics Assoc.*, 26 F. Supp. 2d 1001, 1009 (W.D. Mich. 1998)).

### III. DISCUSSION

Defendants move to have Plaintiff's second amended complaint dismissed in its entirety, asserting that it fails to comport with the court's previous orders and the Federal Rules of Civil Procedure. This argument overreaches. Although the complaint contains some untenable claims and is not as artfully crafted as most complaints drafted by attorneys, it presents a short and concise statement of Plaintiff's claims. It is well established that *pro se* "pleadings are held to a less stringent standard than those prepared by an attorney." *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001) (citing

*Cruz v. Beto*, 405 U.S. 319 (1972) and *Haines v. Kerner*, 404 U.S. 519 (1972)).

Therefore, the court will consider each count of the complaint.

### A. Count 1

Plaintiff's first count alleges that "Hurley Medical Center and Local 1603 failed to honor terms and conditions set forth [in the CBA], including the grievance procedure and the progressive discipline procedure." (Pl. 2d Am. Compl. ¶ 59.) This presents an adequately pleaded hybrid § 301 claim against Hurley and AFSCME.

> A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 561 (6th Cir. 1990). Under § 301, jurisdiction exists when a union member alleges a breach of a collective bargaining agreement:
>
>> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
>
> 29 U.S.C. § 185(a). To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation. *White*, 899 F.2d at 559. These are "the two constituent claims in every hybrid 301 action." *Id.* If the union member fails to prove that the union breached its duty, he will, obviously, recover nothing from the union. If the union member fails to prove that the employer breached the collective bargaining agreement, he also will recover nothing, because the union member's grievance would have failed regardless of the union's representation.

*Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). Plaintiff alleges that Hurley breached the CBA in terminating her employment. Plaintiff further alleges that AFSCME breached its duty by not pursuing the proper grievance procedures. Accepting Plaintiff's allegations as true for the purpose of the motions to

dismiss, this count adequately states a claim upon which relief can be granted. Therefore, dismissal under Rule 12 is inappropriate.

This count further appears to assert a separate claim against Defendant Kristen Deloney for breach of a verbal "assurance." (Pl. 2d Am. Compl. ¶ 64.) This fails to state a claim upon which relief can be granted. Plaintiff has insufficiently pleaded a claim for breach of verbal contract. Under Michigan law, an action for breach of contract comprises four elements: 1) existence of a contract, 2) the terms of the contract, 3) breach of the terms, and 4) damages resulting from the breach. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999). Nothing in the complaint indicates even the existence of a contract. "The essential elements of a valid contract are the following: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Hess v. Cannon Tp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005) (quoting *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991)). Mere failure to perform a promise made without consideration is not ordinarily actionable under Michigan law. *Id.* To the extent that Count 1 attempts asserts a claim of a breach of contract not relating to the CBA, the court will dismiss such claim. Moreover, to the extent the count asserts a breach of contract claim relating to the CBA, it is preempted by the § 301 claim. *See Simoneau v. General Motors Corp.*, 85 F. App'x 445, 448 (6th Cir. 2003).

### B. Count 2

Plaintiff's second count alleges the reputational torts of business defamation and invasion of privacy by false light. Although the court has found no published cases addressing the issue, business defamation appears to be coincident with defamation

under Michigan law. *See Auto Enterprises Sales, Inc. v. General Motors Acceptance Corp. of Canada*, Case No. 248894, 2004 WL 2601247, *4 (Mich. Ct. App. Nov. 16, 2004). Defamation consists of "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication." *Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). Invasion of privacy by false light requires that the "communication must be broadcast to the public in general or publicized to a large number of people." *Reed v. Ponton*, 166 N.W.2d 629, 630 (Mich. Ct. App. 1968).

Statements related to employment and employee conduct generally may be protected from defamation claims by a qualified privilege, but such privilege is not absolute; it protects only statements made in good faith. *See Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 636 (Mich. Ct. App. 1992). Additionally, actions in slander and libel do not hold for statements made to the Michigan Unemployment Insurance Agency. Mich. Comp. Laws § 421.11(b)(1)(iv). Thus, to the extent that Plaintiff asserts publication or broadcast through statements becoming public record through unemployment insurance proceedings, they are barred by statute. Further, if Plaintiff's claims are against coworkers or supervisors based upon statements relating to her employment, they are privileged to the extent they fall within the purview of § 421.11(b)(1)(iv).

However, the fundamental flaw in Plaintiff's defamation claims is that they wholly fail to identify what the alleged defamatory statements were. Additionally, she has failed to allege that such statements were made in bad faith or published to any third party.

Because she has failed to plead the necessary facts to state a claim for defamation, the complaint is insufficient with respect to this count. Therefore, the court will dismiss Count 2.

### C.  Count 3

Count 3 appears to present a claim of retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. To establish a prima facie case of retaliation, Plaintiff must show:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Plaintiff specifically alleges that Defendants began reprimanding her on false grounds only after she filed an EEOC complaint with Defendant Parker. (Pl. 2d. Amd. Complaint ¶ 70.) This ultimately led to her termination. Accepting the complaint as true and drawing from it the reasonable inference that this sudden change in supervisory action was causally related to the EEOC complaints, Plaintiff has stated a claim for retaliation under Title VI.

### D.  Count 4

Plaintiff's fourth count alleges featherbedding and is perhaps the most perplexing claim in the complaint. "Featherbedding is a method of creating or spreading employment by unnecessarily maintaining or increasing the number of employees or the time used to complete a particular job." *Cotton's, Inc. v. Teamsters Local No. 5*, 547 F. Supp. 1336, 1341 (M.D. La. 1982) (quoting Note, *Featherbedding and Taft-Hartley*, 52

Col. L. Rev. 1020-1033 (1952)). It was made, only in part, an unfair labor practice of labor organizations under the National Labor Relations Act, 29 U.S.C. § 158(b)(6). However, this provision has been narrowly interpreted, and it "does not prohibit payment for work actually done or offered, even if that work might be viewed as unnecessary or inefficient." *N.L.R.B. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 473 U.S. 61, 82 n.22 (1985). Plaintiff has only alleged that Defendants engaged in traditional featherbedding by hiring too many employees, which does not satisfy the requirements of § 158(b)(6). Even if this were not the case, the statute does not create a civil cause of action for individual employees to challenge in federal court actions of unions and businesses that may constitute unfair labor practices. Plaintiff's attempt to engraft this alleged violation onto a state law unjust enrichment claim must likewise fail because state tort law is preempted by § 158. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959). Therefore, Plaintiff has failed to present a sufficient factual or legal basis for Count 4.

### E.  Count 5

Plaintiff's fifth count asserts a claim of ethnic intimidation pursuant to Michigan Compiled Laws § 750.147b. The Act provides that "a person who suffers injury to his or her person or damage to his or her property as a result of ethnic intimidation may bring a civil cause of action against the person who commits the offense." Mich. Comp. Laws § 750.147b(3). However, Plaintiff has not alleged any injury or property damage, instead alleging only offensive contact and verbal abuse. In the absence of any injury or damage sufficient to meet the statutory threshold, the court will dismiss Count 5.

### F.  Count 6

Plaintiff's sixth count asserts a claim under the Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, et seq. In relevant part, the ELCRA prohibits employers or labor organizations from discriminating against employees on the basis of race, color, sex, weight, or marital status. Mich. Comp. Laws §§ 37.2202(1), 37.2204(d). Under Michigan law, an ELCRA claim based upon a theory of a hostile work environment requires a showing of five elements:

> (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 468 (6th Cir. 2009) (quoting *Downey v. Charlevoix Cnty. Bd. Road Comm'rs*, 576 N.W.2d 712, 716 (Mich. Ct. App. 1998)). The element of respondeat superior does not require direct discriminatory actions by a direct supervisor, such "liability exists when an employer has adequate notice of the harassment and fails to take appropriate action." *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 854 (Mich. 2005). However, a supervisor—as an "agent" of an employer—may be individually liable for violating the ELCRA. *Id.* at 861.

Plaintiff has alleged that she was subject to continuous harassing and derogatory comments, as well as physical intimidation. (Pl. 2d Am. Compl. ¶¶ 81, 82, 89.) These acts were allegedly based upon Plaintiff's race, color, sex, weight, or marital status. Plaintiff further alleges that this created a hostile environment, which was ignored by supervisory employees and eventually resulted in termination of Plaintiff's employment. (Pl. 2d Am. Compl. ¶¶ 90-92.) Therefore, the count is sufficient on its face insofar as it

11

alleges Hurley or the supervisory employees engaged in unlawful discrimination under the ELCRA. However, Plaintiff does not allege any discriminatory action by the AFSCME Defendants. Plaintiff's claims against these Defendants state only a failure to adequately represent her, without presenting any plausible connection to prohibited discrimination. Mere inadequate representation by a union is actionable under Count 1, but it does not state a separate claim under the ELCRA.

### G. Count 7

To the extent Count 7 is not duplicative of the retaliatory discharge claim in Count 3, it states a claim for creation of a hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Title VII liability attaches to unlawful employment practices of employers, employment agencies, labor organizations, or the joint actions of these entities. 42 U.S.C. § 2000e-2. Individual supervisors or coworkers are not personally liable under Title VII. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). To prevail on her Title VII claim alleging the creation or continuance of a hostile work environment, Plaintiff must assert:

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her belonging to a protected group], (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Williams v. CSX Transp. Co., Inc.*, ___ F.3d ___, 2011 WL 2547561, *6 (6th Cir. June 28, 2011); *see also Boutros V. Canton Regional Transit Authority*, 997 F.2d 198, 203 (6th Cir. 1993) (holding that same test applies to race, color, religion, or national origin). Plaintiff has alleged that she was subject to harassment by her coworkers based upon

her belonging to a protected group. She also alleges that this either led to, or was augmented by, direct adverse treatment by supervisors. Whether the alleged course of action created a sufficiently hostile work environment is "quintessentially a question of fact" for the jury. *Betts*, 558 F.3d at 470 (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)). Therefore, Plaintiff has stated a claim against her employer based upon a hostile work environment. However, her claim of disparate treatment by AFSCME is subsumed under Count 1 and insufficiently alleged as a separate violation of Title VII.

### H.  Count 8

Plaintiff's eighth count asserts a violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, *et seq*. Under the ADA, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff asserting an ADA claim "must prove that (1) she has a disability; (2) she was qualified for the job; and (3) she either was denied a reasonable accommodation for her disability or was subject to an adverse employment decision that was made solely because of her disability." *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996). A "disability," within the meaning of the ADA, is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). The ADA further defines "major life activities" to include walking, standing, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A).

Plaintiff has alleged that her disabilities of post-traumatic stress disorder and physical illness were sufficiently severe to limit her ability to walk. (Pl. 2d Am. Compl. ¶¶ 107, 112.) Plaintiff further alleged that she requested reasonable accommodation, which was denied. (Pl. 2d Am. Compl. ¶¶ 110, 114.) Finally, Plaintiff also alleges this resulted in an adverse employment action through her termination from Hurley. (Pl. 2d Am. Compl. ¶ 114.) Therefore, Plaintiff has presented a prima facie claim under the ADA.

### I.  Count 9

Plaintiff's ninth count claims a violation of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401, *et seq.*  The Act includes a "Bill of Rights" of members of labor organizations against labor organizations. 29 U.S.C. § 411. Plaintiff correctly alleges that these rights are enforceable through civil actions by individuals. 29 U.S.C. § 412. However, Plaintiff's alleged facts do not constitute a violation of any of the rights listed. The Act provides for only five categories of rights of members of labor organizations, all of which relate to participation in the governance of the organization or protection from improper discipline or restrictions by the organization. Plaintiff has not alleged any such actions by AFSCME. Instead, she alleges that the AFSCME failed to represent her against improper actions of Hurley, which is part of her hybrid § 301 claim in Count 1. These allegations fail to state a violation of any right under § 411. Therefore, the court will dismiss Count 9.

### J.  Count 10

Plaintiff's final count asserts a violation of Title II of the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, *et seq.*  Although GINA provides for a private civil cause of action, Plaintiff has failed to plead a sufficient basis for such

claim. See 42 U.S.C. § 2000ff-6(a). An employer or labor organization is prohibited from discrimination on the basis of "genetic information." 42 U.S.C. §§ 2000ff-2, 3. GINA defines "genetic information" as information about a "genetic test" or "the manifestation of a disease or disorder in family members." 42 U.S.C. § 2000ff(4)(A). A "genetic test" is further defined as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(A). As the complaint does not allege use or misuse of any such genetic information, it fails to state a claim under GINA. Therefore, the court will dismiss Count 10.

## IV.  *EX PARTE* COMMUNICATION BETWEEN PLAINTIFF AND REPRESENTED DEFENDANTS

In a Supplemental Brief filed at the request of the court to clarify compliance with Local Rule 7.1(a) [Dkt. #57], Defendant Flint asks the court to admonish Plaintiff and, presumably, to direct her to avoid *ex parte* communication with individual defendants, e.g., the Mayor of Flint, to whom Plaintiff wrote a letter complaining about the conduct of Flint's attorney.

Defendant bases its request on the assumption that such conduct is impermissible, but the court cannot so readily agree with the premise. The Michigan Rules of Professional Conduct require attorneys to "not communicate about the subject of the representation with a party whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Mich. R. Prof'l Conduct R. 4.2. That Rule, however, does not reach the behavior of *parties* such as Plaintiff. To the contrary, official commentary

clarifies that "*parties* to a matter *may* communicate directly with each other" and further that "the right of a party to a controversy with a government agency to speak with government officials about the matter" is a communication "authorized by law" as contemplated by the Rule. Mich. R. Prof'l Conduct R. 4.2 cmt. (emphasis added).

The court can observe, however, that insofar as Plaintiff's intended future communications touch upon this litigation, her communication would likely be more effective if it were done through counsel. Furthermore, the court can envision nothing preventing a represented client in litigation simply declining the invitation to communicate *ex parte* with a self-represented plaintiff, and referring the plaintiff to the client's attorney.

## V.  CONCLUSION

IT IS ORDERED that Defendants' motions to dismiss [Dkt. ## 50, 52, 59] are GRANTED IN PART with respect to Counts 2, 4, 5, 9, and 10 of Plaintiff's Second Amended Complaint and DENIED IN PART with respect to Counts 1, 3, 6, 7, and 8.

IT IS FURTHER ORDERED that Defendants David Sczepanski, Vanessa Nelson, Jay C. Kitson, Sheila Moore, Marlena Miller, Janice Anderson, Carla, Javonka, Emily, and Brandy Marsh are DISMISSED from the above-captioned matter.

                     s/Robert H. Cleland
                     ROBERT H. CLELAND
                     UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 26, 2011, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\10-12661.DUMAS.Motions.Dismiss.12(b)(6).nkt.3.wpd