UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOWANA SHANELL DUMAS,

                Plaintiff,                  CIVIL ACTION NO. 10-CV-12661

        vs.                        DISTRICT JUDGE ROBERT H. CLELAND

                                    MAGISTRATE JUDGE MONA K. MAJZOUB

CITY OF FLINT, BOARD OF
HOSPITAL MANAGERS d/b/a/
HURLEY MEDICAL CENTER,
KRISTEN DELONEY, DWAYNE
PARKER in their official and individual
capacities, AFSCME COUNCIL 25,
AFSCME LOCAL 1603, PATRICIA
RAMIREZ, DELORIS LOTS, and
VICTORIA THOMPSON.

                Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Lowana Dumas brings this *pro se* action alleging that Defendants Hurley Medical

Center ("HMC"), Kristen Deloney, and Dwayne Parker (together the "Hurley Defendants"), and

Defendants AFSCME Council 25, AFSCME Local 1603, Patricia Ramirez, Deloris Lots, and

Victoria Thompson[1] (together the "AFSCME Defendants") violated Section 301 of the Labor

_____

[1]Plaintiff's initial Complaint (docket no. 1) and her First Amended Complaint (docket no. 20) do not list Thomson as a Defendant.  Similarly, Defendant's Second Amended Complaint (docket no. 46) does not list Thompson as a Defendant, but it does describe several allegations against Thompson.  Plaintiff's Third Amended Complaint lists Thompson in the case caption and includes her as a defendant under the heading "The Parties."  (Docket no. 131 ¶ 15.)  The associated docket entry, however, notes that there were "NO NEW PARTIES ADDED."  (*See* docket report at docket no. 131.)  Moreover, it does not appear that Thompson has been served in this matter.  Nevertheless, the instant Motion filed by the AFSCME Defendants is filed by AFSCME Council 25, Lots, Ramirez, *and Thompson*.  (Docket no. 163.)  Therefore, while

Management Relations Act ("LMRA"), Title VII of the Civil Rights Act of 1964, the Elliot Larsen Civil Rights Act ("ELCRA"), and the Americans with Disabilities Act ("ADA") when they created a hostile work environment by failing to act on her reports of workplace harassment and discrimination and then terminated her in retaliation for making such reports despite her disabilities. (*See* docket nos 1, 20, 49, and 131.)  Before the Court are the Hurley Defendants' Motion for Summary Judgment (docket no. 160) and the AFSCME Defendants' Motion to Dismiss or for Summary Judgment (docket no. 163).  Plaintiff filed a Response to both Motions.[2]  (Docket nos. 177 and 178.)  Defendants then filed Replies to Plaintiff's Responses.  (Docket nos. 195 and 197.)  All pretrial matters have been referred to the undersigned for consideration. (Docket no. 200.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[3]

## I.    Recommendation

For the reasons that follow,  the Court recommends granting the Hurley Defendants' Motion for Summary Judgment [160] and granting the AFSCME Defendants' Motion to Dismiss or for Summary Judgment [163].  Therefore, the Court recommends dismissing this matter in its entirety.

## II.    Report

### A.    Facts

---

Thompson may not have been properly served as a defendant in this matter, because their Motion is filed jointly, the Court will include Thompson as one of the AFSCME Defendants for purposes of this Report and Recommendation.

[2]Plaintiff also filed an Addendum (docket no. 184) and exhibits (docket no. 198) related to docket no. 177, and she filed exhibits (docket no. 199) related to docket no. 178.

[3]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

On January 29, 2007, Plaintiff applied for a position with HMC.  Plaintiff alleges that in July 2007, she interviewed with Defendant Deloney, and during that interview, she disclosed her physical and mental impairments, including dysmennorhea, post-traumatic-stress disorder, anxiety, recurrent depression, and a severe allergic response to lactose and dairy products.  She also claims that she told Deloney that she had certain limitations related to these conditions.  (Docket no. 131 ¶¶ 19-23.)

Plaintiff was ultimately hired by HMC, and she attended her orientation on August 20, 2007. (*Id.* ¶ 25.)  Before she was hired, though, on August 6, 2007, Plaintiff signed an "Employee Health Services History & Physical Examination" form.  (Docket no. 161-13.)  In this form, Plaintiff indicated that she was "allerg[ic] to dairy," had "situational" depression, and had a broken foot.  (*Id.* at 2.)  She also noted that she was allergic to cashews and macadamia nuts.  (*Id.* at 3.)  Plaintiff stated that with regard to any accommodations (i.e. restrictions) that she may need to perform her job, she "may need time to control dysmennorhea," but she "[did] not anticipate a problem – [it] would only affect 1st shift employment[, and] this position is 2nd [shift and] 3rd [shift]."  (*Id.* at 4.) Plaintiff signed the document under a notice that "the foregoing statements [were] complete and correct and [she] underst[ood] that falsification of th[e] record may be cause for termination."  (*Id.* at 5.)  Based on this declaration, HMC determined that Plaintiff could begin work on her assigned start date with no restrictions.  (*Id.* at 7.)

Plaintiff alleges that from August 2007 through December 2007 (the date of her termination), she was "subjected to intense malice from co-employees."  (Docket no. 131 ¶ 28.)  Plaintiff asserts that her coworkers subjected her to "glaring, staring, racial slurs in specific reference to [her] multi-cultural ethnicity, such as 'white girl' and 'house nigger;'" that she "was repeatedly battered through

3

unwelcome physical contact; and [that she] was repeatedly harassed by cruel statements, such as 'you smell like shit' and 'it smells like old cheese in here' (when Plaintiff was the only person in the room)." (*Id.*) Plaintiff further alleges that one coworker sprayed industrial-strength cleaner at her and all over her work area. (*Id.* ¶ 30.) Plaintiff indicates that she reported these incidents to Defendant Deloney, who was her supervisor at HMC, and that Deloney promised to speak with the individuals who were harassing her. (*Id.* ¶ 29.) Plaintiff alleges that she asked Deloney for an ADA accommodation because of the anxiety caused by the harassment. (*Id.* ¶ 31.) Plaintiff asserts that the harassment then continued (and escalated) in the following months.[4] (*Id.* ¶¶ 33-36.) Plaintiff contends that she was reassigned from third shift to second shift by Deloney in retaliation for her complaints. (*Id.* ¶ 50.)

Plaintiff's first recorded contact with Deloney regarding any other employees appears to be on September 11, 2007, approximately two weeks after she started at HMC, when Plaintiff sent Deloney an email indicating that she would like to meet "regarding two incidents that are of concern . . . because they jeopardize [her] employment status [and] because they jeopardize the healthcare of the patients in the hospital." (Docket no. 160-2.) Handwritten notes on an email printout indicate that Plaintiff was concerned about an employee named "Brandy," whom Plaintiff alleged had thrown away some lab specimens. (*Id.*)

The next recorded communication between Plaintiff and Deloney occurred through an email on October 12, 2007. (*See* docket no. 160-3.) In her email, Plaintiff implies that she would like the opportunity to work on the first shift and that she had expected to be added to a sign-up sheet for the

---

[4]The details of the alleged harassment are not included in this Report and Recommendation as Defendants do not deny that such conduct (if it occurred and if they had knowledge of it) would support Plaintiff's claims. (*See* docket nos. 160 and 163.)

same. (*Id.*)  Handwritten notes indicate that the shift manager forgot to include Plaintiff and another employee "due to oversite (sic)." (*Id.*)  Plaintiff noted no harassment in her email.

On October 16, 2007, Plaintiff sent another email to Deloney, titled "Notice of Intent to File Grievance."  Plaintiff's email states that she has "opted to initiate the grievance procedure in accordance with the Local 1603 Contract" and that her grievance will concern: (1) a "hostile work environment wherein coworkers strategize to cause voluntary or involuntary termination," (2) an incident involving ER staff, (3) supervisor criticism related to her performance, (4) coworker complaints about her break time, (5) her "being denied an equal employment opportunity" because she receives more work than anyone else; and (6) her "being singled out and subjected to disparate treatment." (Docket no. 160-5.)  Plaintiff noted that "a company is not able to institute a policy which impugns the federally guaranteed rights of an employee to file a grievance with a governing agency, such as the EEOC." (*Id.* at 2.)

Deloney forwarded Plaintiff's email to her direct supervisor. (Docket no. 160-6 at 5.)  And on November 13, 2007, Deloney sent a responsive email to Dwayne Parker, HMC's administrator in charge of EEO and Cultural Diversity.  Deloney's email indicated that she had investigated Plaintiff's complaints and found that they were based on work- and policy-related issues; Deloney did not find any discriminatory basis for any of Plaintiff's complaints. (Docket no. 160-7.)  Deloney also appears to have spoken to Plaintiff about two employees in particular: Marlena Miller and Brandy Marsh.  Deloney told Parker that she believed Plaintiff was threatened by a procedure that has Miller double-checking work performed by Plaintiff (and her coworkers) and that Plaintiff believes that Marsh threw Plaintiff's samples in the garbage. (*Id.* at 2.)  Deloney apparently told Plaintiff to hand her samples off immediately in the future so that nothing like that could happen

again.  (*Id.*)

Meanwhile, on November 3, 2007, Plaintiff sent a memo to Deloney indicating that (1) she felt being singled out was unfair when other employees were making similar mistakes, (2) she was working to resolve an issue related to weekend transportation, (3) she no longer wished to work more than one weekend per month because "these ladies make it clear that they despise me, and for whatever reason they have, [she] accept[s] their positions gracefully," (4) she would like to take December 17, 2007, off of work, and (5) she had an idea for a new procedure for handling extra specimens submitted by the ER.  (Docket no. 160-10.)

From September 17, 2007, through November 28, 2007, Plaintiff was notified that she made at least 10 mistakes by, for example, creating invalid account numbers, entering invalid data, missing tests, registering incorrect patient numbers, ordering extra tests, and failing to resolve specimen types as required.  (*See* docket no. 160-9.)  Also during this time, Plaintiff missed three consecutive days of work, November 16, 17, and 18, 2007.  (Docket no. 161-14.)  When she returned from to work on November 19, 2007, Plaintiff filed out a "Request for Leave of Absence" form indicating that she was gone because of "Food Poisoning – Ill."  (*Id.* at 2.)

During her time at HMC, Plaintiff was on probationary status as a new employee, and on November 18, 2007, Deloney performed Plaintiff's first probationary review.  (*See* docket no. 160-12 at 3-12.)  The review was scored on a scale of 0.0 to 5.0 with 0.0-1.4 listed as "unsatisfactory," 1.5-2.4 listed as "questionable," 2.5-3.4 listed as "satisfactory," 3.5-4.4 listed as "very good," and 4.5-5.0 listed as "outstanding."  (*Id.* at 3.)  Plaintiff received the following scores:

- Technical Excellence: 2.79 (questionable)

- Service: 2.00 (questionable)

- Teamwork: 0.00 (unsatisfactory)

- Honesty and Commitment: 2.00 (questionable)

- Dignity and Courtesy: 2.00 (questionable)

- Accountability and Stewardship of Resources: 1.00 (unsatisfactory)

- Leadership: (score missing)

- Attendance and Tardiness: 0.00 (unsatisfactory).

(Docket no. 160-12; *see also* docket no. 198-8.)  Plaintiff's average evaluation score was 1.4, leaving her on the high edge of the "unsatisfactory" category.  (*Id.* at 3.)

On November 30, 2007, Plaintiff received three official disciplinary actions: (1) a one-day suspension for her unexcused absences on November 15, 16, and 17, 2007; (2) a three-day suspension for "careless workmanship," based on the errors she made on November 26, 2007; and (3) a "suspension pending termination" for "unsatisfactory performance" as set forth in her probationary review.  (Docket no. 160-15.)  Plaintiff was officially terminated as of December 19, 2007.  (Docket no. 161-1.)

Before she was officially terminated, however, on December 5, 2007, Plaintiff filed a grievance through Defendant AFSCME Local 1603.  (*See* docket no. 161-3.)  She was represented by Defendant Thompson and asserted that she "was terminated without being properly orientated on the proper procedures for call-off under her probationary period" and that she "was given an unfair evaluation that was biased based on the personal opinions of other employees, therefore limiting her ability to do her job under her probationary period."  (*Id.* at 2.)  On December 5, 2007, the grievance was denied at step 1; on December 6, 2007, the grievance was denied at step 2; and on March 7, 2008, the grievance was denied at step 3.  (*Id.* at 3.)  Ultimately, the Administrator of

Labor Relations determined that "[t]he discipline was issued in accordance with Medical Center policies and practices" and that "[t]he grievance lacks merit." (*Id.*)

On March 28, 2008, Plaintiff's claims were submitted for arbitration by Defendant Ramirez, the Bargaining Chair for AFSCME Local 1603. (Docket no. 163-13.) The request noted that Plaintiff had been "falsely accused, verbally assaulted, and treated disparately by her supervisor and coworkers." (*Id.* at 5.) AFSCME Council 25 responded on December 4, 2008, indicating that the Council had determined not to proceed to arbitration:

> The grievant was still a probationary employee at the time of their termination. Arbitrators give Employers great latitude to end the employment relationship when an employee is on probation. The grievant would have to provide clear and convincing evidence of misconduct by the Employer against the grievant and that has not been provided.

(Docket no. 163-13.) The Council gave Plaintiff 20 days to object and provide additional documentation supporting her claims. (*Id.*) The matter was officially closed by the AFSCME on March 30, 2009, when Plaintiff had filed no objection to the denial of her arbitration request. (Docket no. 163-14.)

Plaintiff now brings her claims alleging that Defendants violated the LMRA and breached their respective duties under the Collective Bargaining Agreement when they failed to process her grievance and when they tainted the grievance procedure. (Docket no. 131 ¶¶ 84-92.) Plaintiff further alleges that the Hurley Defendants violated Title VII of the Civil Rights Act when they created a hostile work environment and then terminated her for threatening to file a grievance. (*Id.* ¶¶ 93-106.) Plaintiff also alleges that Defendants violated the ELCRA when they created a hostile work environment and failed to take action to address her concerns. (*Id.* ¶¶ 107-113.) And Plaintiff alleges that HMC violated the ADA when Plaintiff was denied reasonable accommodations for her

8

disabilities. (*Id.* ¶¶ 114-119.) In support of her final claim, Plaintiff provides her medical records indicating that she has been previously diagnosed with Adjustment Reaction with Anxiety and Depression, Bipolar Disorder, Posttraumatic Stress Disorder, Menorrhagia, Dysmenorrheam, Uterine Fibriod, Bocornaute Uterus, and Dysparenia. (*See* docket no. 189-1.)

**B.     Standards of Review**

**1.     Motion for Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### 2.     Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory

statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Additionally, "[p]ro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (emphasis removed, citation omitted).

### C.   Analysis

Plaintiff's claims are set forth in five counts each brought against all or some of the defendants. (*See* docket no 131 ¶¶ 84-119.) Plaintiff brings her LMRA claims (Count I) against all of the Defendants. (*Id.* ¶¶ 84-92.) Plaintiff brings her Title VII claims (Count II) against the Hurley Defendants and the City of Flint.[5] (*Id.* ¶¶ 93-99.) Plaintiff brings her Retaliatory Discharge claims (Count III) and her ADA claims (Count V) against HMC and the City of Flint. (*Id.* ¶¶ 100-06; 114-19.) Finally, Plaintiff brings her Hostile Work Environment claims (Count IV) against the Hurley Defendants, the City of Flint, Defendant Lots, and Defendant Ramirez. (*Id.* ¶¶ 107-13.)

---

[5]This City of Flint has been previously dismissed from this matter. (Docket no. 154.)

11

### 1.    Plaintiff's Hybrid LMRA Claims – Count I

Plaintiff's Hybrid LMRA claim alleges that the Hurley Defendants and the AFSCME Defendants violated the LMRA and the collective bargaining agreement entered into between the AFSCME and HMC.  (*Id.* ¶¶ 84-92.)  Plaintiff asserts that Defendants "wrongfully refused to process Plaintiff's grievance through contractually mandated progressive steps or to proceed to arbitration," that "Defendants "handled Plaintiff's grievance arbitrarily, in a discriminatory manner, or in bad faith," that Defendants' "acts and/or omissions, tainted the grievance procedure," and that Defendants' "acts and/or omissions, constituted a breach of its duty of fair representation."  (*Id.* ¶¶87-90.)  Plaintiff further alleges that HMC breached the CBA "by the manner in which it, through Deloney and Parker, disciplined and terminated the employment of Plaintiff."  (*Id.* at 91.)

### a.    The Hurley Defendants

The Hurley Defendants assert that Plaintiff's claims should be dismissed because HMC is a multiple body municipal corporation created by the City of Flint Charter and that such entities are not subject to suit under LMRA § 301.  (Docket no. 160 at 14 (citing *City of Saginaw v. SEIU*, 720 F.2d 459, 462 (6th Cir. 1983)).  The Court agrees, as does Plaintiff.[6]  (Docket no. 117 at 34.)

In a similar claim brought by a former employee against the City College of San Fransisco and his Union, the Northern District of California discussed LMRA § 301:

> The LMRA confers jurisdiction upon the district courts to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ."  29 U.S.C. § 301(a).  However, the LMRA

---

[6]Plaintiff requests leave to "amend the complaint to conform to the evidence" and "to assert the claim under the correct legal theory."  (Docket no. 117 at 34.)  Plaintiff's request is not properly before the Court as such a request must be made in a separate motion.  Moreover, Plaintiff's request does not comply with E.D. Mich. L.R. 15.1 in that even if Plaintiff's request were proper, Plaintiff has not attached the proposed amended pleading.

incorporates relevant definitions from the NLRA. *See id.* § 142(2) . . . The term "employer" is defined as follows in the NLRA:

> The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof, or any person subject to the Railway Labor Act, as amended from time to time, or any labor organization (other than when acting as an employer), or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 152(2). Thus, "section 301(a) of the [LMRA], 29 U.S.C. § 185(a), does not grant this court jurisdiction over the claims of an individual employed by a political subdivision of a state." *Ayres v. Int'l Bhd. of Elec. Workers*, 666 F.2d 441, 444 (9th Cir.1982).

. . . . Federal law governs whether or not a state-created entity is a "political subdivision" under 29 U.S.C. § 152(2). *NLRB v. Natural Gas Util. Dist.*, 402 U.S. 600, 602-03, . . . (1971) ("*Natural Gas*"). The term "political subdivision" is not defined in the NLRA. The Supreme Court has not explicitly created a test for determining whether an entity is a political subdivision of a state either, but it approved in *Natural Gas* of the test used by the NLRB. *Id. at 605.* Under that test, political subdivisions are entities that are "either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* at 604-05; *see also Ayres*, 666 F.2d at 442.

Under the above criteria, [City College of San Fransisco] qualifies as a political subdivision. CCSF was created pursuant to a provision in the California Consitution. *See* Cal. Const. Art. IX § 14 ("The Legislature shall have power, by general law, to provide for the incorporation and organization of school districts, high school districts, and community college districts, of every kind and class, and may classify such districts."). [Plaintiff] argues that CCSF is a creation of the City of San Francisco rather than the State of California. If this is the case, it is only because California has vested cities with the authority to exercise the State's power of creating school districts.

*Lauser v. City College of San Fransisco*, No. 07-6464, 2008 WL 2357246, *2-3 (N.D. Cal., June 6, 2008). Similarly, HMC was created by the City of Flint, and its board consists of 11 members appointed by the Mayor of Flint with the approval of the City Council. (Docket no. 161-2.) Therefore, because HMC is a political subdivision of the City of Flint, the Court does not have

jurisdiction over Plaintiff's LMRA claims.

Defendants further assert that even if the Court has jurisdiction over Plaintiff's LMRA claims, the claims fail because the Hurley defendants did not violate the CBA. (Docket no. 160 at 14-15.) Plaintiff's claim is premised on the assertion that Defendants did not follow the appropriate grievance process. With regard to the Hurley Defendants, Plaintiff asserts that they (1) refused to process her grievances, (2) handled her grievance arbitrarily, in a discriminatory manner, and in bad faith, (3) tainted the grievance procedure, and (4) wrongfully terminated her. (Docket no. 131 ¶¶ 87-91.)

Plaintiff filed her grievance on December 5, 2007, and it was processed through steps 1, 2, and 3. (Docket no. 161-3.) As Defendants indicate, "When asked how Deloney and Parker 'tainted' the grievance process, Plaintiff said that Deloney should not have been given the grievance to respond at Step 1 [because she was bias], and Parker should have investigated her [initial] complaint." (Docket no. 160 at 15 (citing docket no. 161-4 at 3).) But as her immediate supervisor, Defendants contend, Deloney was required to respond to the grievance at step 1. (Docket no. 161-5 at 5-6.) Parker was not involved in the grievance process. And with regard to arbitration, Defendants note that "[t]he responsibility for progressing a grievance to arbitration rests [with the union], not HMC management." (Docket no. 160 at 15 (citing docket no. 161-5 at 28).) Finally, Defendants argue, the CBA specifically gives Defendants the right to terminate Plaintiff as a management decision. (*Id.* (citing docket no. 161-5 at 7-8 and docket no. 20).) Plaintiff asserts that she was told by AFSCME counsel that she was "not allowed to take part in the benefits and priviledges (sic) of the CBA as a probationary employee." (Docket no. 177 at 35.)

If the Court were to accept Plaintiff's assertion as true, her claim would fail because she

would have been notified that she was not protected by the CBA.  Neither Plaintiff nor Defendants, however, have provided any evidence to suggest that Plaintiff is not protected by the CBA. Nevertheless, Plaintiff's claim fails because there is no genuine issue of material fact regarding whether Defendants violated the CBA; there was no violation.  Defendants provided a copy of the grievance form wherein Plaintiff's grievance was denied at steps 1, 2, and 3, as was required by the CBA.  Plaintiff does not appear to deny the validity of this form as Deloney's step-1 denial is the basis for her claim that the procedure was tainted by Deloney's bias.  Her claim of bias, however, must also fail because Deloney's involvement was *required* by the CBA.  Likewise, the CBA does not speak to the involvement of an administrator in Parker's position.  Additionally, as Defendants assert, the CBA sets forth the procedures for arbitration, and it does not contemplate the involvement of the Hurley Defendants.  Therefore, even if the Court finds that jurisdiction is proper with regard to Plaintiff's LMRA claims, the Court should grant the Hurley Defendants' Motion for Summary Judgment with regard to Plaintiff's Count I against the Hurley Defendants.

### b.    The AFSCME Defendants

Claims under Section 301, like Plaintiff's breach of the duty of fair representation claim, are barred by the six-month statute of limitations governing LMRA actions.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-72 (1983).  But "a party is not required to sue on a hybrid claim until the arbitration panel renders its final decision, or until the party reasonably should know that the union has abandoned the party's claim."  *Wilson v. Int'l. Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996) (citing *Schnoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221-22 (6th Cir. 1995)).

The AFSCMA Defendants argue that Plaintiff's LMRA claims are barred because the

15

AFSCME Council denied her application to submit her grievance to arbitration on December 4, 2008, and officially closed the matter on March 30, 2009. (Docket no. 163 at 12-13.) Therefore, Defendants assert, Plaintiff should have filed her claims by June 6, 2009, or (at the latest) by September 30, 2009. Plaintiff filed her initial Complaint on July 6, 2010. (*See* docket no. 1.) Plaintiff asserts that any applicable statue of limitations was tolled because she "did not know of the union's actual failures until September 2011 and June 2012." (Docket no. 178 at 1-2, 5.)

Contrary to Plaintiff's assertion, however, her initial Complaint names the AFSCME Defendants, raises claims of "Breach of Fiduciary Duties," and alleges that "Plaintiff had requested assistance from Local 1603 as far back as August and received none." (Docket no. 1 ¶ 52.) Plaintiff also alleged that she "finally received a grievance AFTER she was terminated," and that her arbitration appeal was denied. (*Id.* ¶¶ 54-56.) Thus, Plaintiff's contention that she "did not know of the union's actual failures" until 14 months after she filed her Complaint alleging such failures is inapposite. Consequently, the statute of limitations barring Plaintiff's claims against the AFSCME Defendants under the LMRA has not been tolled, and the Court recommends granting the AFSCME Defendants' Motion to Dismiss with regard to Plaintiff's Count I against the AFSCME Defendants.[7]

---

[7]Additionally, in *Lauser*, the Northern District of California also discussed applicability of the LMRA as it relates to a union's collective bargaining agreement with a state-created entity:

> For similar reasons, [Plaintiff's] claims against the Union Defendants are outside the Court's jurisdiction. The NLRA definition of "employee" excludes any individual who is employed by any "person who is not an employer as defined" in the statute. . . . CCSF is not an employer for NLRA or LMRA purposes, so [Plaintiff] is not an "employee" in statutory terms. . . . The statutory definition of "labor organization" turns in part on the definition of "employee." "'Labor organization' is defined (in part) as 'any organization . . . in which employees participate and which exists for the purpose . . . of dealing with

### 2.      Plaintiff's Retaliatory Discharge Claim – Count II

#### a.      Claims against Deloney and Parker

As a threshhold matter, the individual Defendants Deloney and Parker cannot be held personally liable under Title VII. *Colston v. Cleveland Pub. Library*, No. 12-1403, 2013 WL 1500438, *4 (6th Cir. Apr. 15, 2013) (citing *Wathen General Elec.*, 115 F.3d 400, 405–06 (6th Cir.1997). "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Id.* (quoting *Wathen General Elec.*, 115 F.3d at 405-06). Therefore, Plaintiff's Count II should be dismissed against Defendants Deloney and Parker, leaving HMC as the only remaining defendant in Plaintiff's Title VII Retaliation claim.

#### b.      Claims against HMC

"Title VII prohibits an employer from discriminating against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Weatherby Federal Exp.*, No. 09-6036, 2012 WL 29205, at *11 (6th Cir. Jan. 5, 2012) (citing 42 U.S.C. § 2000e-3(a)) (insertions in original). Courts analyze such claims under the *McDonnell-Douglas/Burdine* framework when

---

employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.'" . . . Because [Plaintiff] is not an employee and CCSF is not an employer, the Union Defendants are not labor organizations under the statute. LMRA jurisdiction extends to "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." Any agreement between CCSF and the Union Defendants falls outside of this provision, so the Court lacks jurisdiction over [Plaintiff's] NLRA/LMRA claim against the Union Defendants.

*Lauser*, 2008 WL 2357246 at *3 (citations omitted). Thus, even if Plaintiff's claim were not barred by the applicable statute of limitations, her claim would fail on jurisdictional grounds.

"claims are supported by circumstantial evidence."[8]  *Id.* at *11 (citation omitted).

Under this framework, a plaintiff establishes a prima facie case of retaliation by showing that:

> (1) she engaged in [a protected activity]; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment.

*Id.* (citing *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (insertions in original).  If the plaintiff makes such a prima facie showing, "the burden of production of evidence shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Weatherby*, 2012 WL 29205, at *11 (citation and quotation marks omitted).  If the employer articulates such a reason, the plaintiff is required to "demonstrate by a preponderance of the evidence that the proffered reason was mere pretext for discrimination."  *Id.*  The plaintiff can demonstrate pretext by offering evidence that "(1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered for terminating the employee was not the actual reason for termination, or (3) the reason offered was insufficient to explain the employer's action." *Id.* at *9 (citation omitted).  At all times, however, the burden of persuasion remains with the plaintiff.  *Id.*

Defendants allege that Plaintiff was not engaged in a protected activity.  (Docket no. 160 at 16.)  Defendants point to Plaintiff's emails and argue that even if Plaintiff was being harassed, she

---

[8]Here, Plaintiff has neither presented nor asserted that she has any direct evidence of retaliation.  Instead, Plaintiff suggests that she complained of racial discrimination and harassment and that in retaliation for her complaints, the Hurley Defendants "modified [her] job duties," increased the level of harassment, and ultimately terminated her.  (Docket no. 131 ¶¶ 94-98.)

never reported that harassment: "[a]lthough she included the legal terms 'disparate treatment, hostile work environment, and equal employment opportunity, in [her email,] . . . [r]eading [the email] in its entirety only reveals that Plaintiff used legal terms to get attention and threaten future action." (*Id.*) Defendants assert that when Plaintiff met with Parker and Deloney, she did not report any discriminatory conduct that would require investigation. (*Id.* at 16-17.) Thus, Defendants argue, because Plaintiff did not allege any discriminatory harassment until after she was terminated, Defendants did not possess the requisite knowledge to violate Title VII. (*Id.*)

In Plaintiff's complaint, she alleges that the protected activity in which she was engaged was "the filing of complaints about illegal discrimination and harassment . . . based on race, marital status, [and] gender." (Docket no. 131 ¶ 94.) In Response to the Hurley Defendants' Motion, she alleges that "[t]he right to work is a protected activity and plaintiff was engaged in that protected activity each time defendants had access to harass and discriminate against her." (Docket no. 177 at 35.) Plaintiff asserts that her October 16, 2007 email provided Defendants with notice that she was being harassed and that she verbally reported the harassment to Parker when she met with him to discuss her concerns. (*Id.* at 35.) In support of her assertion, she relies on Parker's deposition testimony, wherein he stated that "the concern she had was not being given a fair shake by [Deloney], riding her or something to that degree;" she contends that this statement shows that she approached Parker regarding "denial of an equal employment opportunity." (*Id.* at 35 (citing docket no. 198-11 at 15).)

"Title VII does not prohibit all verbal or physical harassment in the workplace." *Colston*, 2013 WL 1500438, *4 (quoting *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). It only prohibits " "discriminat[ion] . . . because of [an] individual's race, color, religion, sex, or

national origin." *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)).  Thus, assuming, *arguendo*, that Plaintiff was subject to racially based harassment, the central issue before the Court is whether HMC (through Deloney and Parker) had knowledge of such harassment.  If not, Plaintiff cannot make a prima facie showing to support her claim.

Plaintiff's October 16, 2007 email to Deloney (whether passed on to Parker or not), does not support her claim; to the contrary, it supports Defendants' argument that Plaintiff did not report any alleged racial discrimination.  Plaintiff sent this email nearly two months into her employment at HMC.  In the email, she set out seven very specific allegations of unfair treatment over one-and-a-half pages.  Importantly, Plaintiff was not at all vague in her descriptions of the alleged wrongful conduct: Plaintiff discussed specific instructions with which she disagreed; she detailed the events of a call to the ER related to a single specimen; she outlined her coworkers' conduct; she discussed taking a break "to catch [her] breath or to go and get a candy bar;" and she discussed the amount of work that had been assigned to her and her coworkers.  (Docket no. 160-5.)  Plaintiff used terms such as "hostile work environment," "equal employment," and "federally guaranteed rights," but she never asserted that any of her coworkers' conduct was motivated by race, color, religion, sex, or national origin.  (*Id.*)  Considering the level of detail with which Plaintiff set forth her other concerns, Plaintiff's assertion that she intended to convey a charge of racial or sexual discrimination is unsupported.

As Plaintiff correctly notes, however, it is not necessary that she make such an accusation in writing to support her Title VII claim.  Plaintiff could have reported the alleged conduct to Deloney or Parker verbally.  But her claim that she did so is likewise unsupported.  Deloney testified that she has no memory of Plaintiff making such allegations.  (Docket no. 160-6 at 4.)  And Parker

testified that when Plaintiff came to see him, she only complained about Deloney, and she did not report any harassment of any kind. (Docket no. 160-13 at 5-6.) Moreover, in Plaintiff's November 3, 2007 email (sent after she allegedly disclosed the harassing conduct), Plaintiff told Deloney that her coworkers did not like her "for whatever reason they have." (Docket no. 160-10 at 1.) And again, while explicitly detailing her other concerns, she never mentioned any racially or sexually discriminatory conduct by any of her coworkers. (*See id.*)

"The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient" to avoid summary judgment in favor of Defendants. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 576 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Here, Plaintiff "has produced even less than a scintilla of evidence and simply asks the court to disbelieve [Deloney and Parker's testimony];" such an assertion is insufficient to support her claim. *Nilles v. Givaudan Flavors Corp.*, No. 12-3673, *4 (6th Cir. Mar. 29, 2013) (citing *Brown v. City of Franklin*, 430 F. App'x 382, 386 (6th Cir.2011) ("[Plaintiff] contests [the fact that defendant knew plaintiff engaged in a protected activity] simply by contending that human resources 'must have told' [defendant] of [plaintiff's] statements [made in HR interviews]. This, however, is pure speculation, and [plaintiff] conceded that he has no evidence to undermine [defendant's] claim of ignorance."); *Burns v. City of Columbus, Dep't of Pub. Safedy*, 91 F.3d 836, 844 (6th Cir. 1996) (holding that plaintiff had not established employer's knowledge of his disability because he "failed to present any evidence to contradict the affidavit testimony of the . . . Board members who claim to have been unaware of [plaintiff's] injury when they made their decision to recommend his termination")). Even if Plaintiff had been subjected to racially or sexually discriminatory harassment by her coworkers, Defendant has shown that there is an absence of evidence to establish

21

that HMC had knowledge of such conduct.  Therefore, the Court should grant Defendants' Motion

for Summary Judgment with respect to Plaintiff's Count II.[9]

### 3.  Plaintiff's Hostile Work Environment Claims – Counts III and IV

In Count III, Plaintiff alleges that HMC created a hostile work environment in violation of

Title VII through its acts or omissions.  (Docket no. 131 ¶¶ 102-105.)  In Count IV, Plaintiff alleges

that HMC, Parker, and Deloney "had adequate notice of the harassment, and failed to take action"

in violation of the ELCRA.  (*Id.* ¶ 111-12.)  In Count IV, Plaintiff also alleges that Defendants Lots,

Ramirez, and Deloney "subjected [Plaintiff] to unwelcome communication or conduct on the basis

of . . . Plaintiff's race, sex, ethnicity, national origin, weight and marital status."  (Docket no. 131

¶¶ 109-10.)

### a.  Plaintiff's Count III against HMC, and Plaintiff's Count IV against HMC and Parker

"[C]laims of discrimination brought under the ELCRA are analyzed under the same

evidentiary framework used in Title VII cases."  *Galeski v. City of Dearborn*, 435 F. App'x 461, 466

n.4 (6th Cir .2011) (citing *Humeny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir .2004)); *Elezovic*

*v. Bennett*, 274 Mich. App. 1, 731 N.W.2d 452, 457 (Mich. Ct. App. 2007).  To establish a prima

facie case of a hostile work environment against an employer under Title VII (or the ELCRA), a

---

[9]Even assuming, however, that Plaintiff established her prima facie case, the undersigned recommends granting Defendants' Motion in light of the legitimate, nondiscriminatory reason for Plaintiff's termination.  Defendants point to work deficiencies, poor attendance, and an unsatisfactory probationary review as the ultimate cause of Plaintiff's termination.  (*See* docket nos. 160-9, 160-12, and 160-15.)  Although Plaintiff claims Defendants' rationale is merely a pretext for wrongful termination, Plaintiff has provided no evidence to support her assertion. Plaintiff has provided some evidence to suggest that she is qualified for the position and that Defendants did not train her appropriately, but such evidence only shows that HMC has a poor training program; it does not show that her poor evaluation was merely a pretext for a discriminatory discharge.

plaintiff must prove that:

> (1) he is a member of a protected class, (2) he was subjected to unwelcome verbal or physical conduct related to his membership in that class, (3) the harassment was based on his membership in that class, (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment that is severe or pervasive, and (5) the employer knew or should have known about the harassment, but failed to take any action to prevent it.

*Choulagh v. Holder*, No. 12-1957, 2013 WL 2249459, *4 (6th Cir. May 22, 2013) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 503, 515 (6th Cir.2009)). Thus, for the same reasons articulated herein, *supra* at section II.C.2.b, Plaintiff's Count III against HMC and Plaintiff's Count IV against HMC and Parker fail. Even assuming, *arguendo*, that Plaintiff was subjected to unwelcome verbal harassment based on her membership in a protected class and that the harassment unreasonably interfered with her work environment, Plaintiff cannot establish that HMC knew or should have known about the harassment because she cannot establish that she reported it before she was terminated. Therefore, the Court recommends granting Defendants' Motion for Summary Judgment as to Count III of Plaintiff's Complaint and as to Count IV of Plaintiff's Complaint with respect to HMC and Parker.

### b.      Plaintiff's Count IV against Deloney

Defendants assert that Deloney, like HMC and Parker, is entitled to Summary Judgment because "the Hurley Defendants did not have notice of any unlawful conduct." (Docket no. 160 at 20.) But Plaintiff alleges in Count IV that "[t]he unwelcome conduct or communication *was made by . . . Deloney*." (Docket no. 131 ¶ 110 (emphasis added).) And "[t]he Michigan Supreme Court has explicitly held that, although they 'are many times guided in [their] interpretation of the Michigan Civil Rights Act by federal court interpretations of its counterpart federal statute,' unlike under Title VII, an individual may be held personally liable under the ELCRA." *Harris v. Heritage*

23

*Home Health Care*, ___ F.Supp.2d __, 2013 WL 1333317, *5 (citing *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422, 426, 697 N.W.2d 851 (2005)).

> The five elements necessary to establish a prima facie case of . . . a hostile work environment [under the ELCRA] are:
>
> > (1) the employee belonged to a protected group;
> >
> > (2) the employee was subjected to communication or conduct on the basis of [the employee belonging to that protected group];
> >
> > (3) the employee was subjected to unwelcome . . . conduct or communication;
> >
> > (4) the unwelcome . . . conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and
> >
> > (5) respondeat superior.[10]

*Id.* (citing *Elezovic*, 472 Mich. at 412 n. 4, 697 N.W.2d 851 (citing *Radtke v. Everett*, 442 Mich. 368, 383–83, 501 N.W.2d 155 (1993))).

Plaintiff belongs to several protected groups, and again assuming, *arguendo*, that Plaintiff was subjected to harassing communication based on her belonging to one or more of those protected groups, the issue before the Court is whether Plaintiff can make a prima facie showing that Deloney participated in the harassing communication or conduct. Plaintiff alleges in her Complaint that the communication was "made by . . . Deloney," but the evidence submitted to the Court does not support this claim. To the contrary, Plaintiff alleges that she *reported* the conduct to Deloney and

---

[10]"'[I]f an employer is accused of sexual harassment, then the respondeat superior inquiry is unnecessary.'" *Harris*, 2013 WL 1333317, at *6 (citing *Radtke*, 442 Mich. at 397, 501 N.W.2d 155). Because the Court recommends granting Defendants' Motion before reaching this element, the Court will not address whether Deloney could be considered an employer under the ELCRA.

expected her to address the issue with her coworkers.  (*See* docket no. 160-2, 160-4, 160-5, 160-10.)
Moreover, when Plaintiff was asked whether Deloney "treated [her] differently because of [her] skin
color [or] . . . because of [her] weight," Plaintiff replied "No."  (Docket no. 198-26 at 112.)  Instead,
she indicated that it was her coworkers who subjected her to discriminatory harassment.  (*Id.*)

Other than Plaintiff's solitary allegation that Deloney was involved in the alleged
discrimination, Plaintiff provides no evidence in support of her claim.  Therefore, the Court
recommends granting Defendants' Motion for Summary Judgment with respect to Count IV against
Defendant Deloney.

### c.      Plaintiff's Count IV against Lots and Ramirez

Plaintiff's ELCRA claims against Defendants Lots and Ramirez are identical to her claims
against Defendant Deloney.  (*See* docket no. 131 ¶¶ 109-10.)  Defendants Lots and Ramirez,
however, argue that Plaintiff's claims against them are barred by res judicata due to the Court's July
26, 2011 Opinion and Order.  (Docket no. 163 at 17.)  Alternatively, Defendants Lots and Ramirez
assert that Plaintiff cannot establish that they created a hostile work environment.  (*Id.* at 18-20.)

In its July 26, 2011 Opinion and Order, the Court dismissed Plaintiff's ELCRA claims
against the AFSCME Defendants (including Lots and Ramirez) because "Plaintiff d[id] not allege
any discriminatory action by the AFSCME Defendants;" she only alleged "a failure to adequately
represent her," which was only actionable under her hybrid LMRA claim.  (Docket no. 69 at 11-12.)
The Court's Opinion and Order, however, was premised on Plaintiff's Second Amended Complaint.
(*See id.* at 1.)  Like Plaintiff's claims against Deloney, Plaintiff's Third Amended Complaint asserts
individual acts of "unwelcome conduct or communication . . . made by Lots [and] Ramirez."
(Docket no. 131 ¶ 110.)  Thus, the Court's previous order is not dispositive of this matter.

25

Nevertheless, Plaintiff's claim fails for two reasons. Although "an individual may be held personally liable under the ELCRA," *see Harris*, 2013 WL 1333317 at *5, discussed *supra*, such claims are only cognizable when the individual meets the statute's definition of "employer." *See Tryc v. Michigan Veterans' Facility*, 451 Mich. 129, 136, 545 N.W.2d 642 (1996). The ELCRA defines an employer as "a person who has one or more employees, and includes an agent of that person." M.C.L. § 37.2202(a). Plaintiff has neither alleged, nor does it appear that she can establish, that Lots or Ramirez are "employers" under the ELCRA.

Moreover, Plaintiff's own testimony contradicts any suggestion that Lots and Ramirez committed any harassment while Plaintiff was employed. During her deposition, Plaintiff testified as follows:

> Q:   Now, what contact, if any, did you have with Patricia Ramiriz (sic) throughout your employment with Hurley Medical Center.
>
> A:   None.

(Docket no. 198-26 at 211.)

> Q:   Throughout your employment with Hurley, did you have any contact with Deloris Lots?
>
> A:   Not during the employment, no.

(Docket no. 198-26 at 238.) After Plaintiff was terminated, Ramirez worked with her to file a request for arbitration with the AFSCME Council, (*see* docket nos. 163-12 and 163-13), and Plaintiff testified that Lots contacted her to say that "if she had known what was happening, then she could have had me transferred to another department, but no one told her" (docket no. 198-26 at 238-29).

Plaintiff's claims against Lots and Ramirez are not cognizable under the ELCRA because Lots and Ramirez are not "employers" under the ELCRA. Moreover, even viewing the evidence

26

in the light most favorable to Plaintiff, she cannot establish that Lots and Ramirez committed the alleged discriminatory conduct. Therefore, the Court recommends granting Defendants' Motion for Summary Judgment with regard to Plaintiff's Count IV against Defendants Lots and Ramirez.

### 4.     Plaintiff's ADA Claims – Count V

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). To make out such a claim, a plaintiff must show that:

> (1) [the plaintiff] is disabled; (2) [the plaintiff is] otherwise qualified for the position, with or without reasonable accommodation; (3) [the plaintiff] suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir.2011) (internal quotation marks omitted). If a plaintiff meets these requirements, "the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendan's explanation is pretextual." *Id.*

Plaintiff alleges that she suffers from various physical and mental impairments, including Adjustment Reaction with Anxiety and Depression, Bipolar Disorder, Posttraumatic Stress Disorder, Menorrhagia, Dysmenorrheam, Uterine Fibriod, Bocornaute Uterus, and Dysparenia. (*See* docket no. 189-1.) She contends that she informed HMC (through Deloney) that she suffered from these conditions and that HMC denied her requests for reasonable accommodations and ultimately terminated her "solely because of her disabilities." (Docket no. 131 ¶¶ 115-19.) Defendants accept, *arguendo*, that Plaintiff's medical record supports her claim of disability, but they contend that HMC neither knew nor had reason to know of Plaintiff's disability. (Docket no. 163 at 20-22.) The Court

agrees with Defendants.

Like Defendants, the Court will assume, *arguendo*, that Plaintiff is disabled under the requirements of the ADA. But Plaintiff has not provided any evidence to suggest that she actually told anyone at HMC that she was disabled or that she required any accommodations. Plaintiff's hiring materials indicate that she is allergic to dairy, cashews, and macadamia nuts, has "situational" depression, and had a broken foot. (Docket no. 161-13.) Plaintiff also stated (under notice that falsification would be grounds for termination) that her only necessary accommodation was that she "may need time to control dysmennorhea" but that she "[did] not anticipate a problem – [it] would only affect 1st shift employment[, and] this position is 2nd [shift and] 3rd [shift]." (*Id.* at 4, 5.) Moreover, Plaintiff asserts that she was terminated for missing three consecutive days of work due to complications from a uterine fibroid tumor (*see* docket no. 177 at 2-3), but Plaintiff signed a "Request for Leave of Absence" form indicating that she had missed the same three days due to "Food Poisoning – Ill" (docket no. 161-14). Additionally, throughout all of the email communications that she submitted to Defendants, she never mentioned her disability or the need for any accommodations. There is an absence of evidence to support Plaintiff's claims, and therefore, because Plaintiff cannot show that Defendants knew or had reason to know of her disability, the Court recommends granting Defendants' Motion for Summary Judgment with regard to Plaintiff's Count V against HMC.

**D.    Conclusion**

For the above-stated reasons, the Court recommends granting the Hurley Defendants' Motion for Summary Judgment [160] and granting the AFSCME Defendants' Motion to Dismiss or for Summary Judgment [163]. Therefore, the Court recommends dismissing this matter in its entirety.

**III.      Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 18, 2013                              s/ Mona K. Majzoub_____
                                                  MONA K. MAJZOUB
                                                  UNITED STATES MAGISTRATE JUDGE

29

**<u>PROOF OF SERVICE</u>**

       I hereby certify that a copy of this Report and Recommendation was served upon Lowana Dumas and Counsel of Record on this date.


Dated: June 18, 2013              <u>s/ Lisa C. Bartlett</u>

                                   Case Manager